Filed 4/27/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SAVE OUR HERITAGE ORGANISATION, | D070006 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2012-00102270-CU-TT-CTL) |
| CITY OF SAN DIEGO et al., | |
| Defendants and Respondents; | |
| PLAZA DE PANAMA COMMITTEE, | |
| Real Party in Interest and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.


Seltzer Caplan McMahon Vitek and G. Scott Williams for Real Party in Interest and Appellant Plaza de Panama Committee.

Brandt-Hawley Law Group and Susan Brandt-Hawley for Plaintiff and Respondent Save Our Heritage Organisation.

No appearance for Defendants and Respondents City of San Diego et al.

Plaza de Panama Committee (the Committee) appeals from an order denying its motion for attorney fees under Code of Civil Procedure section 1021.5.[1] The Committee filed the motion after it successfully appealed a judgment granting a petition for writ of mandamus filed by Save Our Heritage Organisation (SOHO), in which SOHO challenged the approval by the City of San Diego (City) of a site development permit for a revitalization project in Balboa Park (the project). (See generally *Save Our Heritage Organisation v. City of San Diego* (2015) 237 Cal.App.4th 163 (*Save Our Heritage Organisation*).)

This appeal presents two related issues: whether the Committee, as a project proponent, may obtain a section 1021.5 attorney fees award and, if so, whether the court may impose such an award against SOHO.[2] We conclude a project proponent may obtain a section 1021.5 attorney fees award if the project proponent satisfies the award's requirements. We further conclude, while SOHO does not dispute the Committee satisfied the award's requirements, SOHO is not the type of party against whom the court may impose such an award because SOHO did nothing to compromise public rights. (*Adoption of Joshua S.* (2008) 42 Cal.4th 945, 958 (*Joshua S.*); accord, *Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1020 (*Serrano*).) We, therefore, affirm the order.

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise stated.

[2] The parties briefed the second issue at our request. (Gov. Code, § 68081.)

2

# I

# BACKGROUND

The Committee was founded to shepherd the project through the design and review process. (*Save Our Heritage Organisation*, *supra*, 237 Cal.App.4th at p. 170.) The project involved closing off parts of Balboa Park to vehicle traffic and diverting the traffic via a new bridge to a new pay-parking structure. (*Id.* at pp. 169–171.) After the City approved the project, SOHO filed a petition for writ of mandamus against the City, as respondent, and the Committee, as real party in interest, challenging the City's decision on multiple grounds related to the project's effects on the environment, historical resources, and land use. The superior court granted the petition on some of the grounds and entered a judgment directing the City to rescind the project approval. (*Save Our Heritage Organisation*, *supra*, 237 Cal.App.4th at p. 172.)

The City did not appeal the judgment. However, the Committee and SOHO each appealed aspects of it. (*Save Our Heritage Organisation*, *supra*, 237 Cal.App.4th at pp. 169, 188.) We rejected SOHO's arguments and reversed the judgment because SOHO had not established the City abused its discretion in approving the project. (*Id.* at pp. 172–173, 179, 181–182, 188, 192.)

The Committee subsequently filed a motion in the superior court for an award of attorney fees under section 1021.5 for the time its counsel spent working on the appeal

and on the fee motion.[3]  The Committee argued it satisfied the award's requirements because it was the successful party, the project approval it vindicated conferred a substantial benefit on the general public, its efforts were necessary to vindicate the project approval because the City did not appeal the judgment, and the cost of securing the appellate result transcended the Committee's nonexistent pecuniary interest in the project.

SOHO opposed the motion, arguing attorney fees awards under section 1021.5 are not available to project proponents because awarding such fees to project proponents conflicts with section 1021.5's intent to encourage public interest litigation.  The superior court agreed with SOHO's position and denied the motion.

II

DISCUSSION

A

Section 1021.5 states in part:  "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement ... are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

---

[3]     The Committee sought a total of $96,300.  The court found this amount was reasonable and SOHO does not dispute this finding.

"Section 1021.5 codifies the private attorney general doctrine the Supreme Court adopted in *Serrano v. Priest* (1977) 20 Cal.3d 25. [Citation.] ' " 'The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible.' " ' " (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 611.) " 'In short, section 1021.5 acts as an incentive for the pursuit of public interest-related litigation that might otherwise have been too costly to bring.' " (*Id.* at pp. 611–612.)

"In determining whether to award attorney fees under section 1021.5 to the 'successful party,' we apply a three-prong test inquiring whether (1) the litigation resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit has been conferred on the general public or a large class of individuals, and (3) the necessity and financial burden of private enforcement renders the award appropriate." (*Ryan v. California Interscholastic Federation* (2001) 94 Cal.App.4th 1033, 1044; accord, *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214.)

We generally review a decision whether to award attorney fees under section 1021.5 for abuse of discretion. (*Serrano*, *supra*, 52 Cal.4th at p. 1025.) However, resolution of this appeal turns primarily on interpretations of section 1021.5 and applicable case authorities, which present questions of law we review de novo. (*Id.* at p. 1026.)

SOHO does not dispute the Committee satisfied the three-prong test for obtaining a section 1021.5 attorney fees award.  Instead, as it did below, SOHO contends a court may never award section 1021.5 attorney fees to a project proponent because such an award would defeat section 1021.5's purpose of encouraging public interest litigation.

However, SOHO has not identified any language in section 1021.5 categorically barring project proponents who otherwise satisfy the three-prong test from obtaining an attorney fees award.  On its face, the statute authorizes a court to award attorney fees to "a successful party."  (§ 1021.5.)  "The term 'successful party,' as ordinarily understood, means the party to litigation that achieves its objectives."  (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 571.)  The term is not limited to plaintiffs, petitioners, or real parties in interest aligned with plaintiffs or petitioners.  (*Hull v. Rossi* (1993) 13 Cal.App.4th 1763, 1768 ["section 1021.5 draws no distinctions between plaintiffs and defendants as a 'successful party' "]; accord, *Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 622 (*Wal-Mart*); *County of San Luis Obispo v. Abalone Alliance* (1986) 178 Cal.App.3d 848, 869.)  Rather, the term is synonymous with "prevailing party" and theoretically may apply to any party to the litigation—whether plaintiff, petitioner, defendant, respondent, or real party in interest. (See *Graham v. DaimlerChrysler Corp.*, *supra,* at pp. 571–572; see also *DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 198 [under proper circumstances, § 1021.5 attorney fees may be awarded to a party who successfully defends a public interest lawsuit]; *Woodland Hills Homeowners Organization v. Los Angeles Community College*

*Dist.* (1990) 218 Cal.App.3d 79, 96 [same].) Accordingly, we conclude the Committee's status as a project proponent does not categorically bar it from obtaining a section 1021.5 attorney fees award if it otherwise satisfies the award's requirements.

C

Nonetheless, the California Supreme Court has "recognized an *exception* to be applied in cases where all three [section 1021.5] factors are satisfied, but the party from whom fees are sought 'is not the type of party on whom private attorney general fees were intended to be imposed.' " (*Serrano*, *supra*, 52 Cal.4th at p. 1027, citing *Joshua S.*, *supra*, 42 Cal.4th at p. 953.) Under this exception, "a section 1021.5 fee award may not be imposed on a litigant who did nothing to adversely affect the public interest." (*Serrano*, at p. 1020, citing *Joshua S.*, at p. 958.)

In explicating this exception, the Supreme Court noted, under the American rule, codified in section 1021, "each party to a lawsuit must ordinarily pay his or her own attorney fees." (*Joshua S.*, *supra*, 42 Cal.4th at p. 954.) "Although not explicit in either the statute or case law, it may be supposed that one unspoken justification for departing from the American rule in the case of section 1021.5 private attorney general fees is that it is equitable to impose public interest attorney fees on parties that have done something to adversely affect the public interest." (*Ibid.*)

The Supreme Court's review of published cases in which courts awarded section 1021.5 attorney fees supported this supposition. The review revealed courts typically only imposed such fees on parties who "had engaged in conduct that in some way had adversely affected the public interest," for example by acting or failing to act in a manner

7

"somehow impairing the statutory or constitutional rights of the public or a significant class of people." (*Joshua S.*, *supra*, 42 Cal.4th at pp. 954–955 & fn. 3.)

In addition, the Supreme Court looked to the language of section 1021.5 and determined the language impliedly required that "the party on whom attorney fees are imposed be responsible for adversely affecting the public interest." (*Joshua S.*, *supra*, 42 Cal.4th at p. 955.) The court explained, "[a]lthough the statute does not explicitly address the type of conduct that would make a party liable for attorney fees, it does suggest what conduct the Legislature had in mind. Section 1021.5 authorizes fees for 'any action which has resulted in the *enforcement* of an important right affecting the public interest … .' (Italics added.) The enforcement of an important right affecting the public interest implies that those on whom attorney fees are imposed have acted, or failed to act, in such a way as to violate or compromise that right, thereby requiring its enforcement through litigation." (*Joshua S.*, at p. 956.)

The Supreme Court found further support for its conclusion in the statute's legislative history, which indicated the Legislature intended to provide for an award of attorney fees in "litigation designed to promote the public interest by enforcing laws that a governmental or private entity was violating." (*Joshua S.*, *supra*, 42 Cal.4th at p. 956.) The court also found its conclusion was consistent with *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, which "acknowledged that the parties against whom attorney fees should be assessed should be those responsible for the policy or practice adjudged to be harmful to the public interest." (*Joshua S.*, *supra*, 42 Cal.4th at p. 957.)

8

The relevant inquiry in cases where the defendant or real party in interest prevails in defending against litigation and seeks attorney fees from the party who initiated the litigation is whether the litigation was detrimental to the public interest because it sought to curtail or compromise important public rights. (*Joshua S.*, *supra*, 42 Cal.4th at pp. 957–958.) We cannot answer this inquiry affirmatively in this case.

By filing the petition for writ of mandamus, SOHO did not seek to curtail or compromise important public rights or exonerate SOHO's violation of such rights. (*Joshua S.*, *supra*, 42 Cal.4th at pp. 957–958.) Rather, the litigation sought to correct what SOHO perceived to be violations of state and local environmental, historic preservation, and land use laws by the City. While ultimately unsuccessful, the litigation was precisely the type of enforcement action section 1021.5 was enacted to promote. (*Center for Biological Diversity v. County of San Bernardino*, *supra,* 188 Cal.App.4th at pp. 611–612.) We, therefore, cannot conclude the litigation was detrimental to the public interest such that imposing a fee award on SOHO would be appropriate. Consequently, we conclude the trial court did not err in denying the Committee's motion for an award of section 1021.5 attorney fees.[4]

---

[4] The trial court denied the Committee's motion for attorney fees on a different ground. We review the trial court's order, not its reasoning, and may affirm the order if it is correct on any theory apparent from the record. (*Wal-Mart*, *supra*, 132 Cal.App.4th at p. 625.)

DISPOSITION

The order denying the motion to recover attorney fees is affirmed.  Each party is to bear its own appeal costs.

McCONNELL, P. J.

WE CONCUR:


NARES, J.


HALLER, J.